IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
00 DEC 29 AM 9:55
U.S. [...] COURT
N.D. OF ALABAMA

TOMMY BOLDIN,            )
                         )
        Plaintiff,       )
                         )
vs.                      )   CV 99-BU-2809-M
                         )
STEVE DEES, Warden, et al., )   ENTERED
                         )   DEC 29 2000
        Defendants.      )

## MEMORANDUM OPINION

Before the Court is the motion for summary judgment (Document #11) filed by the defendants named in this action.

Plaintiff Boldin, a convicted Alabama prisoner, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated during his incarceration at St. Clair Correctional Facility in Springville, Alabama. Since the filing of the complaint, Boldin has been transferred to Easterling Correctional Facility in Clio, Alabama. In his complaint, Boldin names as defendants St. Clair Warden Steve Dees, Assistant Warden A. L. Garrett, Captain Robert Simmons, Lieutenant Jimmy Patrick, and Correctional Officer Ralph Lemons. Plaintiff Boldin alleges that these defendants failed to protect him from attack by another inmate. As relief for the alleged constitutional violation, Boldin seeks money damages.[1]

---

[1] Plaintiff Boldin also seeks declaratory relief; however, this request has been rendered moot by his transfer from St. Clair Correctional Facility to Easterling Correctional Facility. "Absent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985).

17

On November 16, 1999, the court entered an order for special report (Document #5) directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint. On January 18, 2000, the Defendants filed their special report (Document #11) attaching their affidavits and pertinent documents. By order of January 19, 2000 (Document #12), the parties were notified that the special report filed by the Defendants would be construed as a motion for summary judgment, and Plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff Boldin, however, has submitted an "opposition response to defendants' special report" (Document #15) that is neither sworn nor made under penalty of perjury. This document is clearly not an affidavit as required by FED. R. CIV. P. 56(e), nor does it satisfy the verification requirement of 28 U.S.C. § 1746. Consequently, Plaintiff's response will not be considered in determining the propriety of summary judgment. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Inmates, Washington County Jail v. England*, 516 F. Supp. 132, 138 (E.D. Tenn. 1980), *aff'd,* 659 F.2d 1081 (6th Cir. 1981). *See also Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 148 n.1 (11th Cir. 1990).

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the Court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most

favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Court of Appeals for the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

FACTUAL BACKGROUND

On the afternoon of August 23, 1999, Plaintiff Boldin was assaulted by another inmate and sustained injuries to his head requiring 39 stitches. Complaint (Document #1) at 3-A & 3-B. At the time of this incident, Plaintiff was incarcerated in the general prison population at St. Clair Correctional Facility ("St. Clair"), which is a maximum security facility housing inmates convicted of murder, rape, robbery, and other serious offenses. Dees Affidavit (Exhibit 1 to Document #11) at 2. Both Warden Dees and Assistant Warden Garrett acknowledge that St. Clair is experiencing "a shortage" of correctional officers, Dees Affidavit at 1, Garrett Affidavit (Exhibit 2 to Document #11) at 2; however, "overtime is in place" and Warden Dees has instructed the "Captains and Lieutenants to ensure that there [are] (7) seven to (8) eight rovers per shift daily," Dees Affidavit at 1. Assistant Warden Garrett avers that there has been no increase in either inmate stabbings or stabbing-related deaths as a result of the officer shortage. Garrett Affidavit at 2. All of the officers assigned to positions at St. Clair are "POST certified. In addition, [o]fficers receive on the job training and [an] additional 40 hours of Advance Training annually." Simmons Affidavit (Exhibit 3 to Document #11) at 2.

Plaintiff Boldin states that at approximately 2:00 p.m. on August 23, 1999, he went to his cell and closed and locked the door and went to sleep. Officer Lemons was the cubicle officer on duty at the time. Complaint at 3-A. It appears that Plaintiff awakened around 3:30 p.m. to find inmate Derrick Graham in his cell.[2] Inmate Graham stabbed Plaintiff twice in the head. Plaintiff states that

---

[2] Plaintiff makes the conclusory assertion that Officer Lemons "opened [his] cell door and let inmate Derrick Graham into [his] cell." Complaint at 3-A. Plaintiff offers absolutely no evidence, however, to support this assertion and Officer Lemons categorically denies that he opened Plaintiff's cell door. Lemons Affidavit (Exhibit 5 to Document #11) at 1. Plaintiff has indicated that he was asleep

he "charged" Graham, then "ran down to the cubicle and told Lemons that [he] had been stabbed by Graham. Complaint at 3-A. Officer Lemons called for rovers to assist him and, at approximately 3:35 p.m., Officers David Thomas, Byron Gover, Shannon Henry, Stephen Tish, and Marlon Bothwell arrived in the cell block and locked it down. Plaintiff was then escorted to the infirmary. Lemons Affidavit (Exhibit 5 to Document #11) at 1-2. Plaintiff's institutional medical records show that he arrived in the infirmary at 3:40 p.m. and that he was provided with medical treatment for his injuries.[3] Exhibit 6 to Document #11. By 4:00 p.m., inmate Graham had been arrested and the weapon he used to stab Plaintiff had been found and confiscated. Dees Affidavit at 2; Simmons Affidavit at 2.

## ATTACK BY ANOTHER INMATE

The Eighth Amendment's prohibition on cruel and unusual punishments imposes upon prison officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This duty includes protecting inmates "from physical assault by other inmates." *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). It is clear, however, that not every injury inflicted by one prisoner upon another "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. at 834. *See also Zatler v. Wainwright*, 802 F.2d at 400; *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981). It is only when

---

at the time inmate Graham entered his cell and it therefore appears that Plaintiff has no actual knowledge of how Graham might have gained access to his cell.

[3]Plaintiff has made no claim that the medical treatment he received was inadequate.

prison officials' deliberate indifference to a known danger or risk exposes an inmate to "objectively, 'sufficiently serious'" harm, that a constitutional violation occurs. *Farmer v. Brennan*, 511 U.S. at 834. *See also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.), *cert. denied*, 496 U.S. 928 (1990).

A danger or risk is "known" only if the prison official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer v. Brennan*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "[t]he known risk of injury must be a '"strong likelihood, rather than a mere possibility."'" *Brown v. Hughes*, 894 F.2d at 1537 (*quoting Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

Once it is established that a prison official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. at 842. Deliberate indifference, however, requires "a state of mind more blameworthy than negligence." *Id.* at 835. Consequently, prison officials are not liable for merely negligent failure to protect a prisoner from attack by another inmate. *Brown v. Hughes*, 894 F.2d at 1537. *See also Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988), *cert. denied*, 489 U.S. 1034 (1989).

In the instant case, Plaintiff Boldin makes the conclusory assertion that "Officer Lemons observed a confrontation between [Plaintiff] and [inmate] Graham prior to [Plaintiff] going to his

6

cell" around 2:00 p.m. Complaint at 3-A. Plaintiff does not, however, provide any details concerning this "confrontation." There is no evidence that the confrontation between Plaintiff and inmate Graham was physical in nature.[4] Further, Plaintiff does not provide any information as to the distance from which Officer Lemons observed the confrontation, nor does he state that inmate Graham threatened him within Officer Lemons' hearing. While Plaintiff complains that Officer Lemons "did not investigate or call for a rover to investigate," Complaint at 3-A, he has failed to set forth any facts that would demonstrate that Officer Lemons was aware of any facts indicating that such an investigation was warranted. Additionally, Plaintiff does not state that he had *ever* reported having any difficulty with inmate Graham to Officer Lemons or to any other institutional personnel. Plaintiff has simply failed to establish that Officer Lemons or any of the other named defendants had any knowledge that inmate Graham posed an excessive risk to plaintiff's health and safety. The defendants are therefore entitled to summary judgment on plaintiff's claim that they failed to protect him from attack by inmate Graham.

## SUPERVISORY LIABILITY

Plaintiff also complains that defendants Dees, Garrett, Simmons, and Patrick failed to properly train and supervise the correctional officers at St. Clair and that the institution was understaffed. While "the doctrine of *respondeat superior* does not apply to § 1983 cases, a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury."

---

[4] In fact, it is noted that in his "opposition response to the defendants' special report," plaintiff states that this was a "verbal confrontation." Document #15 at 4.

7

*Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> [A] causal connection [between the supervisor's actions and the alleged deprivation] can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration .
> . . .

*Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted), *cert. denied*, 500 U.S. 933 (1991). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

   To support his claim that defendants Dees, Garrett, Simmons, and Patrick failed to supervise and properly train the officers at St. Clair, Plaintiff Boldin has alleged only the single incident in which he was attacked by inmate Graham. Plaintiff does not dispute that correctional officers at St. Clair receive pre-service and annual training, nor has he specified how this training is inadequate. While Defendants Dees and Garrett have acknowledged that St. Clair is experiencing "a shortage" of correctional officers, they have explained that measures are being taken to provide adequate safety for the inmates. Plaintiff does not dispute that such measures are being taken and, again, alleges only the single incident in which he was attacked to support his assertion that the prison was understaffed. It must also be observed that it is undisputed that a number of correctional officers responded promptly when notified that Plaintiff had been attacked and that the attacker was swiftly apprehended. In this case, Plaintiff has simply failed to establish the obvious, continuous, and

widespread abuse necessary to have put defendants Dees, Garrett, Simmons, and Patrick on notice that additional officer training and staffing was necessary. Consequently, these defendants are entitled to summary judgment on this claim.

## CONCLUSION

Based on the foregoing, the motion for summary judgment filed by Defendants Steve Dees, A. L. Garrett, Robert Simmons, Jimmy Patrick, and Ralph Lemons is due to be granted. The Court expressly finds that there are no disputed issues of material fact and that the Defendants are entitled to judgment as a matter of law.

The Court will enter a Final Judgment contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this 29th day of December, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE